Mani Sheik (SBN 245487)
SHEIK LAW, INC.
333 West Portal Ave., Suite A
San Francisco, CA 94127
Tel: (415) 205-8490
Fax: (415) 796-0875
Email: mani@sheiklaw.us

Attorneys for Plaintiff
Ian Iljas

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ian Iljas, an individual,<br><br>  Plaintiff,<br><br>v.<br><br>Ripley Entertainment Inc., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>  Defendants. | **CASE NO.:**<br><br>**COMPLAINT**<br><br>1. Age Discrimination<br>2. Race/National Origin Discrimination;<br>3. Breach of Implied Employment Agreement;<br>4. Violation of Labor Code Section 227.3;<br>5. Failure to Provide Accurate Itemized Wage Statements;<br>6. Failure to Pay All Earned Wages at Separation of Employment (Labor Code Sections 201, 203);<br>7. Wrongful Termination in Violation of Public Policy;<br>8. Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200, *et seq.*;<br>9. Failure to Provide Employment and Personnel Files<br><br>**REQUEST FOR PUNITIVE DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ian Iljas alleges:

**JURISDICTION, INTRADISTRICT ASSIGNMENT, AND VENUE**

1. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1332 (diversity jurisdiction), as there is diversity of citizenship among the parties—Plaintiff is a California resident and Defendant is a Delaware resident—and the matter in controversy exceeds $75,000.

2. Venue is proper in this District and Intradistrict Assignment is proper in the San Francisco/Oakland Division (Loc. R. 3-2) because Plaintiff resides in and a substantial part of the events giving rise to Plaintiff's claims, including but not limited to Plaintiff's employment with Ripley, occurred in San Francisco County, which is in this District.

**THE PARTIES**

3. Plaintiff Ian Iljas ("Iljas") is a resident of San Francisco County, California.

4. Defendant Ripley Entertainment Inc. ("Ripley" or "Defendant") is a Delaware corporation with a principal place of business in Orlando, Florida. At all times material hereto, Ripley has conducted business in California and has been an employer whose employees are engaged throughout California.

5. Iljas is unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but prays for leave to amend and serve such fictitiously named defendants once their names and capacities become known.

6. Iljas is informed and believes, and thereon alleges, that DOES 1 through 20 are the partners, agents, owners, shareholders, managers, or employees of Defendant and were acting on behalf of Defendant at all relevant times. Iljas is informed and believes, and thereon alleges, that each and all the conduct alleged herein was performed by, or is attributable to, Defendant and DOES 1 through 20, each acting as the agent for the other, with legal authority to act on the other's behalf. As such, Ripley and DOES 1 through 20 are collectively referred to as "Defendants" and the term "Defendants" as used throughout this Complaint also expressly includes DOES 1 through 20. The conduct of any and all Defendants were in accordance with, and represent the official policy of, each and every one of the Defendants.

7.      Iljas is informed and believes, and thereon alleges, that at all times material hereto, Defendants, and each of them, were the agents of each and all other Defendants, and in doing the things alleged herein, were acting in the course and scope of such agency and with the permission and consent of their co-defendants such that each defendant is responsible in some actionable manner for the occurrences, omissions, and injuries alleged herein. Iljas is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, transactions, and damages alleged herein, and is therefore jointly and severally liable for those damages.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8.      Iljas exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing ("DFEH") on December 29, 2017. Iljas received a Right to Sue notice the same date. This action is being brought within one year of that notice.

9.      California Labor Code sections 2698 *et seq.*, i.e., the Private Attorneys Generals Act of 2004 ("PAGA"), authorizes aggrieved employees to sue, on their own behalf and on behalf of current or former employees, directly for various civil penalties under the California Labor Code. On December 29, 2017, Iljas, on behalf of himself and other current or former employees, provided notice to the California Labor and Workforce Development Agency ("LWDA") and to Ripley (the latter by certified mail and a courtesy copy to Ripley's counsel), pursuant to California Labor Code section 2699.3(a), of the various violations alleged herein and the facts and theories to support the violations.

**FACTUAL ALLEGATIONS**

10.     Ian Iljas is 66-year old man. He is of Indonesian (Asian) descent and was born in Malaysia.

11.     Iljas was a loyal, dedicated employee to Ripley for more than 44 years.

12.     On June 22, 1973, Ripley hired Iljas as a cashier. Iljas then worked his way up Ripley's corporate ladder, rising to various managerial positions, including overseeing the Guinness Museum of World Records, the World of the Unexplained Magic Shop, and Ripley's Museum, and serving as General Manager and running Ripley's San Francisco location for

several years. Iljas also trained two different Korean franchisees regarding operating a Ripley Museum. He also assisted overseeing Ripley's Hollywood store both while it was a franchise and after it was bought and became a company operation, and was involved in hiring four managers for that location. More recently, Iljas served as Senior Manager for Special Projects, focusing on projects in the US and Mexico, Malaysia, Korea, and Thailand.

13. Over his 44 years with Ripley, Iljas was always an exemplary employee. He was never reprimanded, written up, or informed that he was doing anything but a great job. Indeed, Ripley celebrated Iljas' hard work and accomplishments, awarding him two Manager of the Year Awards, a Guest Service Award, and eight Exhibit Trophy Awards. No other Ripley employee has ever won as many Exhibit Trophy Awards as Iljas. Throughout his employment, Iljas took on any new task assigned to him, and made numerous recommendations to help support Ripley's growth and personnel. And Iljas was universally admired by his staff, peers, and superiors. That sentiment was reflected in a company-wide memorandum sent by Ripley's President, Jim Pattison, Jr., on the eve of Iljas' 40th work anniversary, in which Mr. Pattison extoled Iljas as "an important contributor to our company in the acquiring of exhibits, training, as well as working with franchisees overseas and even traveling to Australia during our acquisition of our franchise in Surfer's Paradise," and a "high quality person with integrity" with "many friends throughout the company" who "has been a loyal, dedicated member of our team for a long time."

14. Iljas was the highest-ranked employee of Asian descent in Ripley at the time of his firing; Ripley's senior management is comprised entirely of Caucasians. He was also the only non-Caucasian manager in company-owned stores during his time with Ripley, out of fourteen such positions. Iljas had pushed for the creation of a Regional Manager position for many years, for which he was qualified, but Ripley refused to open such a position for many years. Only after Ripley demoted Iljas in 2014 did Ripley open a Regional Manager position, which it assigned to another, younger, Caucasian employee.

15. In 2013, Iljas had dinner in San Francisco with Pattison. At that dinner, Pattison asked if Iljas wanted to do or pursue anything else in his career, following this question with a comment that Iljas was 100% vested in Ripley's pension plan. Iljas responded that he was still

extremely passionate about Ripley's and even had more motivation than some of his staff, who were all younger.

16. In January 2014, Iljas had a surprise meeting with then Senior Vice President of Attractions and former Legal Counsel, Scott Line, who is no longer with Ripley. At this meeting, Line asked the same question Pattison had posed and also pointed out that Iljas was 100% vested in the Ripley's pension plan. Iljas gave the same passionate answer about wanting to continue his work and having goals and milestones that he still wanted to reach. Line followed up and asked when Iljas planned to retire. Iljas said around age 67. At the time, Iljas was 62 years old, meaning he told Line that he planned to work another five years. Immediately after Iljas explained he wanted to work another five years and, thus, that he had no intention of retiring in the near future, Line said Iljas would receive over $40,000 a year from the pension, and Iljas said that it was a greater than 50% pay cut from his annual salary. Line explained senior leadership, including Pattison and Line, wanted to replace him before that summer and that Iljas' new assigned job tasks would be at Ripley's discretion, which would keep him "busy but not too busy." Line concluded, however, that Iljas "would always have a job at Ripley's"—i.e., that Iljas' employment with Ripley would be terminated only for "good cause."

17. Iljas was then stripped of his position as General Manager and his duties managing the daily operations of Ripley's San Francisco attractions, and given the new title Senior Manager, Special Projects. Though disappointed with being reassigned, Iljas was ever the loyal company man and moved ahead in his new position, eagerly anticipating the continued contribution he could make to the company to which he had devoted his life. Iljas had always been open to any and all tasks, and this new role was no different. So he dove in to the new role and even provided Line with a list of 20 tasks he could assist the company with, to which Line responded the company needed most of the suggestions carried out.

18. Iljas was asked to go to Ocean City, Maryland, to help run Ripley's store attractions and work with the staff there because the manager had recently been fired and had not yet been replaced. That manager had worked for Ripley's for eight years and received six months of severance. After Ocean City, Iljas was sent to manage Ripley's Hollywood location while that

1  manager went to the manager's meeting—the first manager's meeting to which Iljas was not
2  invited in thirty years.

3        19.    On December 11, 2014, Iljas again spoke with Line, who gave Iljas an ultimatum
4  that either Ripley or Iljas can write a memo to the employees regarding the "celebration of his
5  retirement" to send at the end of March 2015. Iljas inquired about severance, to which Line
6  responded: "The past six months you have done very little," and that Ripley felt that time
7  constituted severance itself, but would offer to pay Iljas through March 2015, meaning three
8  months' severance for 41-plus years of service. Line then explained that it was not Iljas' fault
9  Ripley did not give him enough work but that Ripley had a hard time figuring out what work to
10 give him and that his output did not justify how much Ripley was paying him.

11       20.    Iljas said he did not understand why he was being let go despite more than 40
12 years of dedication and loyalty to Ripley's, and requested Ripley provide reasons for the
13 termination. Perhaps surprised that Iljas just did not roll over at the news and accept his fate, Line
14 said he needed to speak with Pattison and get back to Iljas. In February 2015, Line and Iljas met
15 at a restaurant on Fisherman's Wharf in San Francisco. Line said Pattison had decided to retain
16 Iljas since Ripley needed help with various franchise locations and wanted him to see what help
17 was needed. As a result of that meeting, Iljas began travelling all over the world for Ripley's,
18 visiting locations in Mexico and Asia that had no point person as well as locations in India and
19 Europe.

20       21.    In November 2015, Iljas was tasked to update exhibit inventories. Iljas excelled in
21 his new duties. Indeed, Iljas received yet another Exhibit Trophy Award for his exhibit search to
22 replenish and add to existing inventory and, in October 2015, was once again invited to the
23 annual manager's meeting, RipCon.

24       22.    At RipCon 2015, Iljas was told by a colleague that Pattison and Darren Loblaw,
25 Ripley's CFO, were going to throw a surprise retirement party for a coworker, Russell Murphy,
26 and Iljas was going to be included. This was certainly a surprise to Iljas, as he was not retiring
27 and had never voiced any intent to retire at that point in his career. In fact, he had, to the contrary,
28 explained he planned to work several more years. Fortunately, the surprise retirement party did

not take place because the other supposed retiree, Murphy, did not attend. Unfortunately, this infuriated Pattison, as it foiled his surprise plan to retire both these senior employees.

23. During that same RipCon, in October 2015 in Toronto, Pattison sat next to Iljas on a train ride to Niagara Falls. He began talking about exhibit searches, which he said Iljas was very good at, and what work Iljas was doing. Pattison then popped the question he really wanted to ask, asking again when Iljas planned to retire. Iljas responded, again, that he planned to work for several more years.

24. In June 2017, Iljas received a call from Pattison, who again wanted to know Iljas' plans were for retirement. Pattison asked how long Iljas had been working for Ripley's, knowing the answer fully well himself. After Iljas replied that he had been with Ripley 44 years, Pattison said "that's too long." A silent pause followed, since there was nothing Iljas could say to reply to this comment, and Pattison then followed with "I'm just joking." Of course, he wasn't. Pattison concluded "we are reaching the end of the line here," referring to Iljas' employment.

25. On July 31, 2017, Iljas received a final call from Pattison, saying he was being retired because his services were no longer needed because there was "no more work" for Iljas to do. That was untrue too. At that exact moment, in fact, Iljas was in the middle of three exhibit inventory projects for the three Mexico locations, and had plans to visit three other locations. In other words, there was plenty of work for Iljas if Pattison and Ripley had not let their discriminatory bias and animus get in the way.

26. The next day, August 1, 2017, Iljas received a formal termination letter from Pattison inviting him to RipCon later that year to attend his "retirement celebration." Pattison wrote: "As I mentioned during our call, we would also like to extend an invitation to have a retirement celebration at RIPCON this year. I would also be happy to send out a company-wide note regarding your departure and the upcoming celebration at RIPCON."

27. But Iljas had not retired, did not talk of retiring, and did not want to retire. He was fired and the ruse of a "retirement party" was foisted onto him, as if Ripley was doing him some kind of favor. Iljas' termination violated Ripley's internal policies and practices that spell out a progressive discipline process for termination of employment. What's more, Ripley also violated

1  its long-established practice by not offering, upon the termination of Iljas' employment, one
2  month of severance pay for every year of service.

3  28. To add insult to injury, Pattison and Ripley's knew that Iljas has been attending to
4  his wife's health needs as she is currently battling cancer and undergoing treatment and suffers
5  from multiple sclerosis, but refused to engage in the interactive process or to provide sufficient
6  accommodations, such as time off or leave, to address his wife's serious health condition.

7  29. Ripley did not pay Iljas for all wages earned and owing upon the termination of his
8  employment. Ripley failed to issue what it claimed was a final paycheck until at least August 9.
9  But even this "final" paycheck was incorrect, as it misstated the number of vacation hours Iljas
10 had accrued and was owed. As of Iljas' last day of employment, and throughout his employment,
11 Defendants maintained an illegal "use it or lose it" vacation policy. In fact, Ripley openly flaunts
12 this illegal "use it or lose it" vacation policy on page 37 of its Employee Handbook, which states
13 that "all vacation not used at the end of a calendar year will be forfeited." This "use-it-or-lose-it"
14 policy violates California law, including Labor Code sections 227.3 and 226.

15 30. Ripley's Employee Handbook also states that all vacation requests must be in
16 writing. Ripley's has not produced Iljas' employment files or any written requests for vacation
17 time. Ripley thus owes Iljas for all vacation time accrued over the course of his employment.

18 31. Because Ripley's illegal vacation policy also applies to all current and former
19 California employees, Ripley similarly owes other current and former California employees their
20 full allotment of accrued, unused vacation time or pay in lieu thereof.

21 32. On September 25, 2017, Iljas requested, through his counsel and pursuant to Labor
22 Code sections 226, 432, and 1198.5, that Ripley provide copies of all his personnel and
23 employment files. As of the date of this filing, Ripley has not provided those files.

24 **FIRST CAUSE OF ACTION**
25 (Age Discrimination)

26 33. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set
27 forth herein.

28 34. At all times material hereto, Ripley was an employer and Iljas an employee as

defined by the Fair Employment and Housing Act ("FEHA").

35. Defendants' conduct, as alleged above, constitutes unlawful discrimination on the basis of age under Government Code section 12940 in that Iljas was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, demoted, and, ultimately, had his employment terminated on account of his age. Each of the Defendants was aware of and participated in this discrimination.

36. As a direct, foreseeable, and legal result of the Defendants' conduct, Iljas has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Iljas has incurred and will incur medical and other incidental expenses for treatment by health professionals.

37. Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Iljas, from a willful improper motive amounting to malice, and in conscious disregard of Iljas' rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Iljas is thus entitled to recover punitive damages in an amount according to proof.

38. As a result of Defendants' conduct as alleged herein, Iljas is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

(Race/National Origin Discrimination)

39. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

40. At all times material hereto, Ripley was an employer and Iljas an employee as defined by FEHA.

41. Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

basis of race/national origin under Government Code section 12940 in that Iljas was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, demoted, and, ultimately, had his employment terminated on account of his race/national origin. Each of the Defendants was aware of and participated in this discrimination.

42. As a direct, foreseeable, and legal result of the Defendants' conduct, Iljas has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Iljas has incurred and will incur medical and other incidental expenses for treatment by health professionals.

43. Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Iljas, from a willful improper motive amounting to malice, and in conscious disregard of Iljas' rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Iljas is thus entitled to recover punitive damages in an amount according to proof.

44. As a result of Defendants' conduct as alleged herein, Iljas is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## THIRD CAUSE OF ACTION

(Breach of Implied Employment Agreement)

45. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

46. In January 2014, Iljas met with then Senior Vice President of Attractions and formerly Legal Counsel, Scott Line, who explained senior leadership, including Pattison and Line, wanted to replace Iljas before that summer and that Iljas' new assigned job tasks would be at Ripley's discretion, which would keep him "busy but not too busy." Line concluded that Iljas "would always have a job at Ripley's." Line thus stated that Iljas' employment with Ripley would

be terminated only for "good cause."

47. Iljas performed all the obligations on his part under the employment contract, except those excused or made impossible by Defendants' conduct. Following that meeting, Iljas continued to carry out the tasks and duties assigned him by Ripley as a Senior Manager for Special Projects, focusing on projects in the US, Mexico, Asia, and Europe. Throughout this time, Iljas excelled in his new duties, including receiving yet another Exhibit Trophy Award in 2015 for his exhibit search to replenish and add to existing inventory and, in October 2015, once again being invited to RipCon. Also during this time, Ripley had no cause to discipline Iljas, much less terminate his employment. In fact, Iljas was never subjected to any form of progressive discipline after Line stated he "would always have a job at Ripley's."

48. Iljas and Ripley had thus reached a mutual understanding as to the particular terms or conditions of his employment—namely that Iljas would continue to work with and provide services to Ripley and that his employment would only be terminated for "good cause" and through Ripley's progressive discipline process.

49. Iljas' employment was terminated on August 1, 2017. The termination was not for "good cause." This violated Line's and Ripley's implied contract that Iljas "would always have a job at Ripley's."

50. As a direct, foreseeable, and legal result of the Defendants' conduct, Iljas has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Iljas has incurred and will incur medical and other incidental expenses for treatment by health professionals.

51. As a result of Defendants' conduct as alleged herein, Iljas is entitled to prejudgment interest and costs.

**FOURTH CAUSE OF ACTION**

(Violation of Labor Code Section 227.3)

52. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set

forth herein.

53. Labor Code section 227.3 states: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination."

54. Ripley's vacation policy violates this statute, as it states, on page 37 of Ripley's Employee Handbook, that "all vacation not used at the end of a calendar year will be forfeited."

55. Ripley's Employee Handbook also states that all vacation requests must be in writing. Ripley's has not produced Iljas' employment files or any written requests for vacation time. Ripley thus owes Iljas for all vacation time accrued over the course of his employment.

56. Because Ripley's illegal vacation policy also applies to all current and former California employees, Ripley similarly owes other current and former California employees their full allotment of accrued, unused vacation time or pay in lieu thereof.

57. Ripley concealing its unlawful conduct from Iljas and its other current and former employees, precluding such employees from bringing an action earlier.

58. As a result of Defendants' conduct as alleged herein, Iljas is entitled to back wages, prejudgment interest, reasonable attorneys' fees (pursuant to Labor Code section 218.5), and costs.

## FIFTH CAUSE OF ACTION

(Failure to Provide Accurate Itemized Wage Statements)

59. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

60. Labor Code section 226 requires an employer to keep accurate, itemized pay statements. Each pay statement must accurately itemize: gross wages earned; the precise, actual number of hours and minutes worked by a non-exempt employee; all deductions; net wages

1 earned; inclusive dates of the pay period; the name of the employee; the name and address of the
2 legal entity that is the employer; and all applicable hourly rates in effect during the pay period.

3     61.     The vacation time laws in Labor Code Section 227.3 protect vested wages and,
4 thus, information regarding accrued vacation must accurately be stated in an employee's wage
5 statement.

6     62.     Ripley routinely, knowingly, and intentionally failed to provide Iljas, at the time of
7 each payment of wages, an accurate itemized statement in writing that satisfied the requirements
8 of Labor Code Section 226.

9     63.     As a direct and proximate result of Ripley's knowing and willful conduct, Iljas has
10 suffered harm and is entitled to the greater of actual damages as ascertained at trial or $50 for the
11 initial pay period and $100 for each subsequent pay period, not exceeding an aggregate penalty of
12 $4,000.

13     64.     As a direct and proximate result of Ripley's willful, knowing, and intentional
14 conduct, Iljas is entitled to recover civil penalties pursuant to Labor Code section 226.3.

15     65.     As a direct and proximate result of Ripley's willful, knowing, and intentional
16 conduct, Iljas is entitled to recover civil penalties pursuant to PAGA, including for prejudgment
17 interest, reasonable attorneys' fees, and costs.

18 <center>**SIXTH CAUSE OF ACTION**</center>
19 (Failure to Pay All Earned Wages at Separation of Employment (Labor Code Sections 201, 203))

20     66.     Iljas realleges and incorporates by reference all prior Paragraphs as if fully set
21 forth herein.

22     67.     At all times relevant herein, Ripley is and was an employer under the California
23 Labor Code.

24     68.     Pursuant to Labor Code Sections 201, 203, and 227.3 and related case law, Ripley
25 was required to pay Iljas for all wages earned and owing at the time Ripley terminated his
26 employment, on August 1, 2017, including but not limited to pay for all accrued but unused
27 vacation time.

28     69.     Ripley did not pay Iljas for all wages earned and owing upon the termination of his

employment. Indeed, Ripley failed to issue what it claimed was a final paycheck until at least August 9, 2017. But even this "final" paycheck was incorrect, as it misstated the number of vacation hours Iljas had accrued and was owed.

70. As of August 1, 2017 (Iljas' last day of employment), and throughout his employment, Defendants maintained an illegal "use it or lose it" vacation policy that states "all vacation not used at the end of a calendar year will be forfeited." This "use-it-or-lose-it" policy violates California law, including Labor Code sections 227.3 and 226.

71. As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the above laws, Iljas has been damaged in that he has not received all wages due and owing, and has suffered and continues to suffer losses related to the use and enjoyment of wages and lost interest on such wages, in amounts according to proof at trial.

72. As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the above laws, Iljas was damaged by not receiving all wages owed to him and is entitled, among other things, to recover the unpaid balance of the full amount of this accrued and unused vacation time, including civil penalties and interest thereon, together with prejudgment interest, reasonable attorneys' fees, and costs, pursuant to Labor Code Sections 203, 218.5, 227.3, and 2698 *et seq.*

## SEVENTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy)

73. Iljas realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

74. At all times material hereto, Ripley was an employer and Iljas an employee as defined by FEHA.

75. Defendants discriminated against Iljas due to his age and/or race/national origin.

76. Defendants terminated Iljas in violation of the public policies of the State of California prohibiting discrimination, as expressed in FEHA, other California statutes, and decisions of the California and federal judiciary.

77. As a direct, foreseeable, and legal result of the Defendants' conduct, Iljas has

suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Iljas has incurred and will incur medical and other incidental expenses for treatment by health professionals.

78.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Iljas, from a willful improper motive amounting to malice, and in conscious disregard of Iljas' rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Iljas is thus entitled to recover punitive damages in an amount according to proof.

79.     As a result of Defendants' conduct as alleged herein, Iljas is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION

(Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200, *et seq.*, and Code of Civil Procedure § 526)

80.     Iljas realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

81.     California Business & Professions Code sections 17200 *et seq.* prohibit acts of unfair competition, which includes any "unlawful and unfair business practices."

82.     Defendants' conduct, as alleged herein, has been and continues to be unfair, unlawful, and deleterious to Iljas and other current and former California employees. Iljas hereby seeks to enforce important rights within the meaning of Code of Civil Procedure section 1021.5. Iljas is a "person" within the meaning of the Business & Professions Code section 17204, and therefore possesses standing to bring this suit for injunctive relief and restitution.

83.     It is the policy of California to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and

to protect those employers who comply with the law from losing competitive advantage to other employers who fail to comply with labor standards and requirements.

84.     Through the conduct alleged herein, Defendants acted contrary to these public policies and have engaged in unlawful and/or unfair business practices in violation of Business & Professions Code sections 17200 *et. seq.*, depriving Iljas and other current and former California employees of the rights, benefits, and privileges guaranteed to employees under California law.

85.     Defendants regularly and routinely violated the California Labor Code with respect to the allegations in this Complaint. Namely, Defendants regularly and routinely failed to provide Iljas and other current and former California employees with the full and correct amount of vacation time (or pay in lieu thereof upon termination) by implementing and using an illegal "use it or lose it" vacation policy.

86.     By engaging in theses unfair business practices, Defendants harmed Iljas and other members of the public and, by that design and plan, gained an unfair competitive edge in the marketplace. Defendants should be made to disgorge such ill-gotten gains and restore them to Iljas and other current and former California employees.

87.     Under Business & Professions Code section 17203, Iljas is entitled to obtain restitution of these funds from Defendants on behalf of himself and others affected by Defendants' unfair business practices.

88.     Pursuant to Business & Professions Code section 17203, injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair business practices alleged herein. Iljas is informed and believes, and based thereon alleges, that Defendants and persons acting in concert with them have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Iljas has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above described acts will cause great and irreparable damage to Iljas unless Defendants are restrained from committing further illegal acts.

89.     Iljas' success in this action will result in the enforcement of important rights.

1   90.     Private enforcement of the rights enumerated in this Complaint is necessary, as
2  public agencies have only sought limited enforcement of those rights, if any. Iljas, individually
3  and by and through counsel, has incurred and continues to incur a financial burden in pursuing
4  this action. Iljas further seeks to enjoin the above-referenced unlawful actions under the Labor
5  Code. Therefore, Iljas seeks an award of prejudgment interest, attorneys' fees, and costs pursuant
6  to Code of Civil Procedure section 1021.5 and other applicable Labor Code sections.

### NINTH  CAUSE OF ACTION

(Failure to Provide Employment and Personnel Files)

9   91.     Iljas realleges and incorporates by reference all prior Paragraphs as if fully set
10  forth herein.

11   92.    Labor Code section 226(c) provides that an employer "who receives a written or
12  oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or
13  former employee shall comply with the request as soon as practicable, but no later than 21
14  calendar days from the date of the request."

15   93.    Labor Code section 432 provides that an employee who "signs any instrument
16  relating to the obtaining or holding of employment. . . shall be given a copy of the instrument
17  upon request."

18   94.    Labor Code section 1198.5(b)(1) provides that an "employer shall make the
19  contents of [an employee's] personnel records available for inspection to the current or former
20  employee, or his or her representative, at reasonable intervals and at reasonable times, but not
21  later than 30 calendar days from the date the employer receives a written request."

22   95.    Labor Code section 1198.5 also establishes an employee's right to recover
23  penalties for violation of the statute, together with prejudgment interest, attorneys' fees, and costs.

24   96.    On September 25, 2017, Iljas requested, through his counsel and pursuant to Labor
25  Code sections 226, 432, and 1198.5, that Ripley provide copies of all his personnel and
26  employment files.

27   97.    As of the date of this filing, Ripley has not provided those files.

28   98.    As a direct and proximate result of Ripley's conduct, Iljas is entitled to statutory

penalties, prejudgment interest, and to his reasonable attorneys' fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. Compensatory damages, including but not limited to for losses resulting from humiliation, mental anguish, and emotional distress, in amounts to be proven at trial;
2. General and special damages, in amounts to be proven at trial;
3. Statutory penalties;
4. Interest according to law;
5. Exemplary and punitive damages, in amounts to be proven at trial;
6. Costs;
7. Reasonable attorneys' fees;
8. An order to cease the illegal "use it or lose it" vacation policy; and
9. For such other and further relief as this Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Plaintiff requests a trial by jury.

Respectfully submitted,

Date:   January 8, 2018          SHEIK LAW, INC.

By:      /s/ Mani Sheik
Mani Sheik
Attorneys for Plaintiff Ian Iljas