UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IAN ILJAS,

        Plaintiff,

    v.

RIPLEY ENTERTAINMENT INC.,

        Defendant.

Case No. 18-cv-00136-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 53, 54

Before the Court is Plaintiff Ian Iljas's motion for summary adjudication. ECF No. 53. In the alternative, Iljas seeks partial summary adjudication as to liability, leaving a jury to decide damages. ECF No. 53 at 2. Iljas seeks summary adjudication of the following claims:

1. Failure to Pay Vested Vacation Time in Violation of California Labor Code § 227.3 (Fourth Cause of Action);

2. Failure to Provide Accurate Itemized Wage Statements in Violation of California Labor Code § 226 (Fifth Cause of Action);

3. Failure to Pay All Earned Wages at Separation of Employment in Violation of California Labor Code §§ 201, 203 (Sixth Cause of Action); and

4. Failure to Provide Employment and Personnel Files in Violation of California Labor Code §§ 226, 1198.5 (Ninth Cause of Action).

ECF No. 53 at 2. Defendant Ripley Entertainment, Inc. ("Ripley") has filed a response in opposition. ECF No. 60. Iljas has filed a reply. ECF No. 66.

Also before the Court is Ripley's motion for partial summary judgment. ECF No. 54. Ripley seeks partial summary judgment regarding the following claims and issues:

1. Discrimination Based on Age in Violation of California Government Code § 12940 (First Cause of Action)

2. Sanctions under Federal Rule of Civil Procedure 11 (Second Cause of Action)

3. Breach of Implied Employment Agreement (Third Cause of Action)

4. Failure to Provide Accurate Itemized Wage Statements in Violation of California Labor Code § 226 (Fifth Cause of Action)

5. Severance Pay (Sixth and Eighth Causes of Action)

6. Unpled Cause of Action for Failure to Accommodate a Disability

7. Wrongful Termination in Violation of Public Policy (Seventh Cause of Action)

ECF No. 54 at 2-3; ECF No. 67 at 17-19. Iljas opposes the motion. ECF No. 62. Ripley has filed a reply. ECF No. 67.

For the reasons below, the Court will grant both motions in part and deny them in part.

## I. BACKGROUND

Iljas brings suit against his former employer, Ripley, for nine causes of action asserting employment discrimination and various wage and hour violations. ECF No. 1.

Iljas is 68 years old. *See* ECF No. 63 ("Iljas Decl.") ¶ 1. Iljas started working for Ripley on June 22, 1973 as a cashier and continued to work at Ripley for the next 44 years. *Id.* ¶ 2. Over the course of his career, Iljas held several managerial positions at Ripley, including overseeing the Guinness Museum of World Records and the World of the Unexplained Magic Shop. *Id.* Iljas spent most of his career as the General Manager of the Ripley's Believe It or Not Museum in San Francisco. *Id.* During his tenure, Iljas won many internal awards: He was a six-time winner of the Chuck Thielen award, a two-time winner of the Outstanding Guest Services Award, and a two-time winner of the Manager of the Year Award. *Id.* at 13. Iljas was never formally reprimanded or written up during his time at Ripley. ECF No. 65 ("Sheik Decl.") at 115.

In 2010, Ripley remodeled the San Francisco museum location that Iljas managed. *Id.* at 117. After the remodel, attendance at the site declined. *Id.* at 113. Ripley blamed the decline in part on Iljas's managerial skills. *Id.* at 111. In reaction to this decline, Ripley "transition[ed]" Iljas out of his role as General Manager of the San Francisco museum and into a new role as

"Senior Manager for Special Projects." ECF No. 56 ("Rubin Decl.") at 9-10; Iljas Decl. ¶ 6. Iljas's previous position as General Manager was ultimately given to a 29-year-old. Sheik Decl. at 264. However, attendance at the San Francisco location did not improve. *Id.* at 151. The "Senior Manager for Special Projects" role was created specifically for Iljas and ceased to exist after he was terminated. Rubin Decl. at 47. While in that role, Iljas received an Exhibit Trophy Award for his work. Iljas Decl. ¶ 6.

James Pattison, Jr., is the current President of Ripley. *Id.* at 11. Scott Line is the former Vice President of Legal and Business Development at Ripley. Rubin Decl. ¶ 2. On several occasions, these members of upper management asked Iljas about his plans to retire or reminded him about his pension benefits. *See, e.g.*, Sheik Decl. at 202-03 (Pattison); *id.* at 206-07 (Line); Iljas Decl. ¶ 4 (Line); *id.* at 6 (Pattison). During at least one of these conversations, Iljas told Line that he did not want to retire and wanted to keep working for Ripley. Iljas Decl. ¶ 4.

Iljas points to various comments made by Pattison and Line which he perceived as indicating discriminatory animus towards older employees. Iljas Decl. at 28 (Pattison referencing the "end of the line" for Iljas and describing 44 years with the company as "too long"); Sheik Decl. at 62 (same); *id.* at 64-65 (same); *id.* at 204-05 (same); *id.* at 155 (Line discussing "need to focus on . . . bringing in a next generation"); *id.* at 157 (same, also noting "we had a generation of managers that were, you know, getting older"); *id.* at 35 (Pattison observing that "from young people, you want to try to learn something from them because they think differently, they act differently . . . because we're in a family-attraction business, we're looking for young ideas and, you know, new people coming in").

Several other employees have complained about a discriminatory culture at Ripley, as well as specific ageist comments made by management. *See, e.g.*, ECF No. 64 ("Meyer Decl.") ¶¶ 12-13 (Pattison making repeated comments about the health, age, and retirement of an employee in his late 50s); *id.* ¶ 14 (Pattison regularly declaring in weekly meetings that he "doesn't trust anyone over 40 to make decisions" and "wanted people in their 20's" around him); *id.* ¶ 15 (Pattison telling same employee that he needed to "pass the torch" and "teach the young," criticizing employee for being "old and stubborn" and not "embracing technology," and

3

explaining that he did not want to work with "fossils and dinosaurs"); Sheik Decl. at 217 (another employee reporting that she resigned after Ripley's Chief Financial Officer, Darren Loblaw, asked how old she was and when she planned on retiring, and told her she "look[ed] pretty worn out"); *id.* at 221-22 (Loblaw noting the need to bring in "young people who are good with technology").

On December 11, 2014, Line told Iljas that his employment would be terminated in March 2015. Sheik Decl. at 143. However, this decision was reversed in February 2015 and Iljas continued to work. *Id.* at 120-21. In October 2015, Ripley attempted to throw Iljas a "surprise" retirement party planned by Pattison and Loblaw, but it did not come to fruition. Iljas Decl. ¶ 5.

Ultimately, Ripley permanently terminated Iljas on July 31, 2017. ECF No. 55 ("McNulty Decl.") ¶ 7; Iljas Decl. at 30, 32. Ripley did not provide him with a final paycheck until August 9, 2017. ECF No. 53-1 at 60. At the time of termination, Iljas's hourly rate was $40.38. *Id.* at 54-55. As part of his final payment, Ripley paid Iljas for 120 hours of vacation time he had accrued but not used that year, but Ripley did not pay for the other 5,000 unused vacation hours accrued over the course of Iljas's employment. *Id.* at 62.

## II.      LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the

nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

### A. Failure to Pay Vested Vacation Time (Fourth Cause of Action)

Iljas requests summary adjudication regarding Ripley's alleged violation of California Labor Code § 227.3. ECF No. 53 at 11. The Court will grant summary adjudication in part and deny it in part: Ripley is liable for violating this provision as a matter of law, but there remains a genuine dispute of fact regarding the calculation of damages.

Section 227.3 provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; *provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination*." Cal. Lab. Code § 227.3 (emphasis added). Under California law, "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982). When, by policy or contract, an employer offers vacation pay, it "constitutes deferred wages for services rendered." *Id.* at 784. The right to vacation pay "vests as the labor is rendered." *Id.* (internal quotation marks omitted); *see also Owen v. Macy's, Inc.*, 175 Cal. App. 4th 462, 469 (2009) ("vacation pay vests as it is earned"). This means that a terminated employee must "be paid in wages for a pro rata share of his vacation pay." *Suastez*, 31 Cal. 3d at 784.

Vested vacation pay is "protected from forfeiture by section 227.3." *Id.* In this context, "forfeiture" refers to an "employer [taking] away the employee's vested vacation time." *Reznik v.*

*Int'l Bus. Machs. Corp.*, No. 15-CV-02419-YGR, 2016 WL 3162229, at *2 (N.D. Cal. June 7, 2016) (citation omitted). California courts distinguish policies that constitute forfeitures from those that set limits on the accrual of future vacation time. *Id.* Courts have permitted vacation policies "that warn employees, in advance, that they will cease to accrue vacation time accumulated in excess of an announced limit." *Owen*, 175 Cal. App. 4th at 470. However, an employer cannot reclaim a benefit that they have offered and the employee has already earned. *See Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *7 (N.D. Cal. Sept. 27, 2012). Thus, "use-it-or-lose-it" policies, wherein an employee's vested vacation time "is confiscated if unused within a specific time period," are treated as impermissible forfeitures prohibited under § 227.3. *Reznik*, 2016 WL 3162229, at *2; *see also Molina v. Lexmark Int'l, Inc.*, No. CV 08-04796 MMM (FMx), 2008 WL 4447678, at *1 (C.D. Cal. Sept. 30, 2008).

Ripley's employee vacation policy states that "(v)acation not used by the end of the calendar year will be forfeited." ECF No. 53-1 at 70. The "procedure" section of this policy states that "(a)ll Team Members are required to request vacation time off from their supervisor in writing." *Id.* The policy also states that "(r)egular full-time Team Members are permitted 80 hours (10 days) of paid vacation per employment year(s) up to five years. After 5 years, regular full-time Team Members are permitted 120 hours (15 days) of paid vacation." *Id.* Ripley has not provided any evidence indicating that a different vacation policy governed Iljas's 44-year period of employment. *See id.* at 28-29. Ripley's Employee Handbook states in the "Separation" section that "(i)n the case of separation, your accrued vacation pay will be paid." *Id.* ¶ 5.

On its face, this policy is a forfeiture because it explicitly states that any unused vacation pay will be forfeited at the end of the calendar year. *See id.* at 70; *Reznik*, 2016 WL 3162229, at *2. Pattison has confirmed that an employee "can't carry forward" hours past the annual cap and that this constitutes a "use-it-or-lose-it policy." ECF No. 53-1 at 11, 53. According to Pattison, "[t]he idea of the policy is we want people to take their vacations on the year they're intended, and, then, the next year, you start over." *Id.* at 11. There is no way to interpret this as anything other than an impermissible use-it-or-lose-it policy. *See Molina*, 2008 WL 4447678, at *1 n.4 ("A 'use it or lose it' policy is one in which unused vacation or personal days are neither paid at the

end of the calendar year nor rolled over to the next year."). Thus, Ripley's vacation policy constitutes an illegal forfeiture under § 227.3. *See Suastez*, 31 Cal. 3d at 784. Furthermore, there is no evidence that Ripley established a cap on vacation accrual. Thus, Ripley is liable to Iljas for any vacation hours that he accrued but did not use over the course of his employment.

The more difficult issue is the extent of Iljas's damages. Section 227.3 provides that "all vested vacation shall be paid to [a terminated employee] as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Cal. Lab. Code § 227.3. Over the course of his employment, Iljas accrued 645 days, or 5,160 hours, of vacation time. ECF No. 53-1 at 34-36. Defendants do not contest this point. *Id.*

Nonetheless, there are material disputes of fact regarding (1) what amount of this vested vacation time Iljas used or was paid for during the course of his employment and (2) what amount of vacation time Ripley compensated Iljas for upon his termination. Ripley has produced records that Iljas took 160 of his vacation hours between 2011 and 2017. *Id.* at 46. Ripley does not have formal records indicating that Iljas took any vacation time between June 1973 and February 2011. *Id.* at 50. At termination, Ripley paid Iljas for 120 hours of vacation time accrued but not used that year, but did not pay for any other unused vacation hours accrued over the course of Iljas's employment. *Id.* at 62. Iljas argues that Ripley owed him for 5,000 hours of accrued but unused vacation time when they terminated his employment. ECF No. 53 at 15. Iljas bases this argument on Ripley's lack of affirmative records showing the contrary. *Id.* at 9. Thus, calculated at his final hourly rate of $40.38, Iljas argues that Ripley owes him $201,900. *Id.* at 9.

But Iljas bears the burden of establishing the amount of damages, and Ripley's absence of records is not the only evidence in the record. In his deposition, Iljas admitted to vacation practices that are inconsistent with taking only 160 hours of vacation over 44 years of employment. *See* ECF No. 61 at 16-19, 22. For example, Iljas usually took one or two days of personal vacation adjacent to the annual corporate meeting. *Id.* at 16. He also took at least two vacation trips that were paid by Ripley but that counted against his vacation time. *Id.* at 18-19. Iljas has not conclusively established that he is owed 5,000 hours of accrued but not paid vacation time. This is a factual inquiry that cannot be resolved on summary judgment.

In conclusion, the Court holds that Ripley's vacation policy violates § 227.3 as a matter of law. Ripley owes Iljas for any vacation pay that he accrued but did not use over the course of his employment. The Court also finds that Iljas accrued 5,160 hours of vacation time, which Ripley does not contest. However, the Court denies summary adjudication as to the number of vacation hours that Iljas has used or been paid for as a dispute of material fact to be decided by a jury.

**B.      Failure to Provide Itemized Wage Statements (Fifth Cause of Action)**

The second issue before the Court is whether Ripley has violated California Labor Code § 226 by failing to provide Iljas with accurate wage statements. Both parties move for summary judgment in their favor. ECF No. 53 at 16; ECF No. 60 at 15. The Court will deny Iljas's motion and grant Ripley's motion.

Section 226(a) requires every employer to furnish "semimonthly or at the time of each payment of wages" an accurate itemized wage statement listing the employee's wages and certain other specified categories of information. *See* Cal. Lab. Code § 226(a). An employee who suffers an injury under § 226(a) may recover damages under § 226(e). *Id.* § 226(e)(1). An employee is deemed to suffer an injury for purposes of § 226(e) if "the employer fails to provide a wage statement" or if the employer "fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a)." *Id.* §§ 226(e)(2)(A), (B). A claim for damages under § 226(e) requires a showing of three elements: "(1) a violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014); *see also Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1141 (E.D. Cal. 2012).

Iljas offers no evidence in support of this claim. He has not submitted any wage statements, deficient or otherwise. Iljas places great weight on Ripley's failure to provide wage statements after Iljas's employment ended, and in fact Ripley does not dispute that it failed to provide such statements. On September 25, 2017, Iljas's attorney informally requested his wage statements and personnel files from Ripley. ECF No. 53-1 at 133. Ripley failed to produce the

wage statements at that time or subsequently.[1]  However, Iljas never served formal discovery on

Ripley that would have compelled production of these statements or obtained an admission or

interrogatory response showing that the statements were inaccurate, incomplete, or not timely

provided.  Even Iljas's declaration in opposition to Ripley's summary judgment motion is silent on

this issue.  *See* ECF No. 63.

In his opposition to Ripley's motion, Iljas acknowledges that "[i]t is . . . unknown (not

undisputed) whether those non-existent wage statements complied with Labor Code section 226."

ECF No. 62 at 29 (emphasis omitted).  This knowledge gap does not help Iljas.  Given that Ripley

has shown that Iljas "does not have enough evidence of an essential element to carry [his] ultimate

burden of persuasion at trial," *Nissan*, 210 F.3d at 1102, Iljas must now produce admissible

evidence to show that a genuine issue of material fact exists, *id.* at 1102-03.  Because he has not

done so, the Court will grant summary judgment to Ripley on this claim.  *Cf. Keenan v. Allan,* 91

F.3d 1275, 1279 (9th Cir.1996) (It is not the court's task "to scour the record in search of a

genuine issue of triable fact.  We rely on the nonmoving party to identify with reasonable

particularity the evidence that precludes summary judgment." (quoting *Richards v. Combined Ins.*

*Co.,* 55 F.3d 247, 251 (7th Cir.1995)).

### C.      Failure to Pay All Earned Wages at Separation (Sixth Cause of Action)

The issue before the Court is whether Ripley is liable for the failure to pay all earned

wages at separation of employment.  Iljas alleges that Ripley violated California Labor Code

§ 201 by failing to issue his final paycheck at the time of discharge and by failing to include all

owed vacation pay in this final paycheck.  ECF No. 53 at 17-18.  Iljas requests summary judgment

in his favor.  *Id.* at 2.

Section 201(a) provides that "[i]f an employer discharges an employee, the wages earned

---

[1] At the hearing on these motions, Ripley acknowledged that it was required to produce the wage statements unprompted pursuant to the Northern District of California's Initial Discovery Protocols for Employment Cases Alleging Adverse Action.  *See* https://www.cand.uscourts.gov/filelibrary/3308 (General Order 71 adopting protocols ("G.O. 71"); https://www.cand.uscourts.gov/news/223 (announcement regarding protocols' renewal).  Close inspection of the protocols, however, shows that they were adopted only for cases filed on or after February 1, 2018.  *See* G.O. 71 at 1.  The instant case was filed on January 8, 2018, before the protocols were in effect.

and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. If an employer "willfully" fails to pay these wages on the day they are owed, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced." *Id.* § 203. "The purpose of section 203 is to compel the prompt payment of earned wages; the section is to be given a reasonable but strict construction." *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (Ct. App. 1981). "As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done." *Id* (emphasis omitted).

### 1.    Issuance of Final Paycheck

First, Iljas claims that Ripley violated § 201 by failing to provide his final paycheck upon termination, entitling him to damages under § 203. ECF No. 53 at 17-18. Ripley terminated Iljas's employment on July 31, 2017 but did not provide him with a final paycheck until August 9, 2017. ECF No. 53-1 at 60. Iljas's hourly rate at the time of termination was $40.38. *Id.* at 61. Iljas requests 9 days' waiting time penalties, amounting to $2,907.36. ECF No. 53 at 18. Ripley has not offered any opposition to this claim. *See* ECF No. 60. Therefore, the Court grants summary adjudication in Iljas's favor as to Ripley's violation of § 201(a) and awards Iljas $2,907.36 in damages pursuant to § 203.

### 2.    Vacation Pay

Second, Iljas claims his final paycheck violated § 201 because it failed to compensate him for all accrued but unused vacation time, as discussed above. ECF No. 53 at 18. Thus, Iljas argues Ripley owes him further waiting time penalties. *Id.* Because the Court has already found there is a genuine dispute of fact as to the number of accrued but unused and unpaid hours of vacation time Ripley owes to Iljas, the Court denies summary judgment on this claim.

### D.    Failure to Provide Employment and Personnel Files (Ninth Cause of Action)

The next issue before the Court is whether Ripley is liable for failing to provide Iljas with his employment and personnel files on request. ECF No. 1 at 17. Ripley has offered no opposition.

California Labor Code § 226(b) requires employers "to keep the information required by

subdivision (a)" and affords "current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer."  Cal. Lab. Code § 226.  An employer who receives a reasonable request "shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request."  *Id.* § 226(c).  The failure to comply within this timeframe "entitles the current or former employee . . . to recover a seven-hundred-fifty-dollar ($750) penalty from the employer."  *Id.* § 226(f).  "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."  *Id.* § 226(h).

Similarly, Section 1198.5 affords "[e]very current and former employee . . . the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee."  Cal. Lab. Code § 1198.5(a).  Section 432 provides that "[i]f an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."  *Id.* § 432.  An employer is required to make these records available within "30 calendar days from the date the employer receives a written request" unless agreed otherwise.  *Id.* § 1198.5(b).  The failure to comply within this timeframe entitles the requesting party to "recover a penalty of seven hundred fifty dollars ($750) from the employer."  *Id.* § 1198.5(k).  "A current or former employee may also bring an action for injunctive relief to obtain compliance with this section, and may recover costs and reasonable attorney's fees in such an action."  *Id.* § 1198.5(l).

On September 25, 2017, Iljas requested his wage statements and personnel files from Ripley.  ECF No. 53-1 at 133.  Ripley has failed to produce wage statements.  Thus, as a matter of law, Ripley has violated § 226(c), which entitles Iljas to recover a $750 penalty under § 226(f).  Ripley provided Iljas with his personnel files 128 days after his request, which violates the 30-day requirement in § 1198.5(b).  ECF No. 53-1 at 144.  Thus, Iljas is entitled to recover a $750 penalty under § 1198.5(k).  Therefore, the Court awards Iljas $1,500 in penalties.  Pursuant to §§ 226(h) and 1198.5(l), the Court further orders that Iljas may recover his costs and reasonable attorneys' fees as to this cause of action upon application.

### E.     Discrimination Based on Age (First Cause of Action)

Ripley moves for summary judgment on Iljas's claim for age discrimination in violation of California's Fair Employment in Housing Act ("FEHA").  Iljas claims that he was "subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, demoted, and, ultimately, had his employment terminated on account of his age."  ECF No. 1 ¶ 35.  The Court will deny summary judgment because there remain genuine disputes of material fact to be resolved by a jury.

FEHA prohibits employers from discriminating against their employees based on age.  Cal. Gov't Code § 12940(a).  In FEHA employment discrimination cases, plaintiffs can prove their cases in either of two ways: "by direct or circumstantial evidence."  *DeJung v. Superior Court*, 169 Cal. App. 4th 533, 549 (2008).[2]  When the plaintiff seeks to prove his case by indirect evidence, the court applies "the three-stage burden-shifting test established by the United States Supreme Court to analyze disparate treatment claims of age discrimination."  *Dinslage v. City & Cty. of San Francisco*, 5 Cal. App. 5th 368, 378 (2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).  "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., evidence that the plaintiff was replaced by someone significantly younger than the plaintiff."  *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 321 (2010).  "A plaintiff's burden in making a prima facie case of discrimination is not intended to be 'onerous.'"  *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

"If the plaintiff satisfies this prima facie burden at trial, a presumption of discrimination arises, and the defendant must put forth legitimate, nondiscriminatory reason for its actions."

---

[2] "Because California law under the FEHA mirrors federal law under Title VII," courts look to both California state law as well as pertinent federal precedent when evaluating a FEHA claim. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998).

*Dinslage*, 5 Cal. App. 5th at 378. An employer's reasons need not rest on objectively true information. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Instead, courts require only that the employer "honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (citation and internal quotation marks omitted).

If the defendant puts forth a legitimate, nondiscriminatory reason, "the plaintiff must then rebut these nondiscriminatory reasons with evidence of pretext." *Dinslage*, 5 Cal. App. 5th at 378. "The plaintiff may then attack the employer's proffered reasons as mere pretexts for discrimination or offer other evidence of discriminatory motive, but the ultimate burden of persuasion remains on the plaintiff." *Id.* A plaintiff may do this by producing either direct evidence of discriminatory motive, which need not be substantial, or circumstantial evidence that is "specific and substantial" evidence of pretext. *Godwin*, 150 F.3d at 1221-22 (internal quotation marks omitted). If the plaintiff succeeds in demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case proceeds beyond the summary judgment stage.

By contrast, when a plaintiff opposing summary judgment presents direct evidence of a discriminatory motive, the court does not assess the direct evidence in the burden-shifting *McDonnell Douglas* framework. *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004). "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004) (quoting *Godwin*, 150 F.3d at 1221) (alteration in original). To defeat summary judgment, the direct evidence must be "evidence directly tied to the adverse employment decision." *France*, 795 F.3d 1170, 1173 (9th Cir. 2015) (internal quotations and citations omitted). "Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." *DeJung*, 169 Cal. App. 4th at 550; *see also Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005) ("Direct evidence is evidence which can be interpreted as an acknowledgment of the defendant's discriminatory intent."). However, "stray remarks not directly tied to the decisionmaking process are not direct evidence capable of defeating summary judgment." *France*,

795 F.3d at 1173.

Iljas identifies as evidence of direct discrimination three occasions where Pattison asked Iljas about his retirement plans; Pattison's attempt to throw Iljas a retirement celebration; and comments made by Pattison and Line suggesting general, discriminatory animus towards older employees. *See* ECF No. 62 at 18-19. As to the first category, the Ninth Circuit has found that while retirement discussions can be circumstantial evidence of discrimination, they are not direct evidence of discrimination. *France*, 795 F.3d at 1173. Other of the comments Iljas identifies, however, constitute direct evidence. For example, Line referred to the stated "need to bring in that next generation of leaders" and Pattison testified he was "trying to bring in [a] new generation of leaders to the company that bring in new thoughts, new blood" and was "always talking about [] bringing in the next [] generation and new ideas, new thinking." ECF No. 62 at 19; *see Sheridan v. Providence Health & Servs.-Oregon*, No. 10-CV-775-PK, 2011 WL 6887160, at *2 (D. Or. Dec. 29, 2011) (manager's comments indicating that he "was engaged in a prolonged effort to replace older nurses on the unit" constituted direct evidence).

In cases where plaintiffs present "both some direct evidence and some circumstantial evidence, it is most appropriate to consider the propriety of summary judgment under the *McDonnell Douglas* framework." *France*, 795 F.3d at 1173. The Court therefore turns to that framework below.

### 1. Prima Facie Case

The court must first determine whether Iljas has established a prima facie case of age discrimination. It is uncontested that Iljas satisfies the first and third *McDonnell Douglas* elements because he is a member of a protected class due to age, and because he suffered an adverse employment action in the form of termination. Iljas Decl. ¶¶ 1-2. Ripley argues that Iljas cannot prove the second element because his performance was inadequate, and that he cannot prove the fourth element because his termination did not involve circumstances indicative of discrimination. ECF No. 54 at 18.

Iljas has provided enough evidence that he was performing competently in his position to meet the second *McDonnell Douglas* element. Iljas started as a cashier in 1973 and worked his

way up to hold several managerial positions at the company, including overseeing the Guinness Museum of World Records, the World of the Unexplained Magic Shop, and Ripley's Museum. Iljas Decl. ¶ 2. Iljas also won many internal awards: He was a six-time winner of the Chuck Thielen award, a two-time winner of the Outstanding Guest Services Award, and a two-time winner of the Manager of the Year award. Iljas Decl. at 13. Ripley has attributed a decrease in attendance at its San Francisco location to Iljas's managerial skills, but the Court concludes that Ripley has not provided sufficient evidence to establish that Iljas was the cause. *See* ECF Nos. 54 at 9; 56 at 13. Notably in that regard, attendance has not improved since Iljas's termination. Rubin Decl. at 151. When considered in conjunction with Iljas's long career, promotions, and awards, Ripley has not met its burden of demonstrating as a matter of law that Iljas's performance was not competent.

Iljas has also provided enough evidence to prima facie satisfy the fourth *McDonnell Douglas* element. Upper management brought up retirement with Iljas on numerous occasions despite his repeated statements that he did not wish to retire. Iljas Decl. ¶¶ 4-5. Iljas recalls an incident where Pattison asked him how many years he had been employed at the company. Sheik Decl. at 204. When he responded with "44," Pattison replied, "Oh, that's too long." *Id.*

Furthermore, there is evidence that Ripley's management suffered from a general culture of ageism. Edward Meyer, another former Ripley employee, has stated that he believes Iljas's age influenced Pattison's decision to fire him because "Mr. Pattison has been pushing for the past several years a movement to bring in younger people. I know this because Mr. Pattison has been very candid with me that this is his goal." Meyer Decl. ¶ 9. According to Meyer, Pattison told him "that I was 'too old' to continue in my role and said, several times, that my opinion does not count anymore because I am not in the 'target audience' of his customers, who he has said are young men." *Id.* ¶ 13. Meyer also recalled that "Mr. Pattison declared nearly every week that he 'doesn't trust anyone over 40 to make decisions' and 'wanted people in their 20's' around him to help him better target Ripley's customer base. This was a mantra he repeated for more than a year and a half in a weekly management meeting attended by 15 or so people, including me." *Id.* ¶ 14. Meyer recalled that "Mr. Pattison also said that he does not want to work with 'fossils and

15

dinosaurs.'" *See Ezell*, 400 F.3d at 1051 (finding that a supervisor's statement that he "had a plan to get rid of older workers and replace them with younger, faster workers is direct evidence of discriminatory intent and is sufficient evidence . . . to take his case to trial"). In addition, Pat Stram, a former corporate HR manager at Ripley, stated that she left Ripley after a 13-year career because she felt hurt after several comments Ripley CFO Loblaw made about her age. Sheik Decl. at 217. Based on this evidence, the Court finds that Iljas has established a prima facie case of discrimination.

### 2.      Pretext

Because the Court has found that Iljas has provided enough evidence to establish a prima facie case of age discrimination, the burden shifts to Ripley to produce a legitimate, non-discriminatory reason for terminating Iljas's employment. *See Haley*, 871 F. Supp. 2d at 953 (N.D. Cal. 2012). Ripley argues that Iljas's performance suffered during his tenure as General Manager of the San Francisco location. ECF Nos. 54 at 9; 56 at 13. Line has testified that Iljas "probably" should have been terminated at this point, but that they specifically created a new position for him, "Senior Manager for Special Projects," so that he could "land softly." Rubin Decl. at 11. The role was created specifically for Iljas and ceased to exist after he was terminated. *Id.* at 47. Ripley claims that Iljas proceeded to underperform in his new role, and thus they were "ultimately forced" to terminate Iljas. ECF No. 54 at 10. According to Line, "I would say probably 95 out of a hundred companies probably would have fired Ian earlier." Rubin Decl. at 10. Pattison says that he asked several Ripley managers whether they had work available for Iljas and they answered in the negative. *Id.* at 51-55. Thus, Ripley claims that Iljas was ultimately terminated "due to a combination of lack of work and mediocre performance." ECF No. 54 at 11. The Court concludes that Ripley has successfully articulated a legitimate, non-discriminatory reason for terminating Iljas's employment. *See France*, 795 F.3d at 1175.

### 3.      Dispute of Material Fact

Finally, "[w]e come to the crux of this case. Once the [employer] has articulated legitimate, nondiscriminatory reasons for its decision . . . the burden shifted to [Plaintiff] to raise a genuine dispute of material fact as to pretext to avoid summary judgment." *Id.* Plaintiffs can

"demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011). The Ninth Circuit has "repeatedly held that it should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion." *France*, 795 F.3d at 1175.

Here, Iljas points to several disputes of material fact that preclude summary judgment. First, there is a genuine dispute as to whether Iljas performed incompetently. Iljas points to his performance reviews, awards, and the lack of any negative comments about his work. ECF No. 62 at 22. Iljas received one of these awards during his tenure as "Special Projects" manager. ECF No. 63 ¶ 3. Second, there is a genuine dispute as to whether Ripley lacked work for Iljas. Although Pattison claims that he asked several Ripley managers whether they had work available for Iljas and they answered in the negative, one of these managers has disputed this characterization. ECF No. 56 at 51-55; Meyer Decl. ¶¶ 6-7. According to Meyer, "[i]t is inaccurate . . . that I declined to offer any work to Mr. Iljas. From when Mr. Iljas became the Senior Director of Special Projects in mid-2014 to when he was fired in August 2017, Mr. Pattison only twice asked me if I had work for Mr. Iljas. Both times I said I did." Meyer Decl. ¶ 6. There is also evidence that Iljas still had plenty of work to do when he was terminated. Meyer states Iljas was still working on, or had not yet started, outstanding projects at the time he was fired in Mexico, Korea, Niagara Falls, Wisconsin, England, and Denmark. Meyer Decl. ¶ 7. Third, there is a genuine dispute of fact about several discussions and comments made by management in the workplace that could provide circumstantial evidence of discrimination. ECF No. 62 at 23. As many of these comments were considered above in the Court's discussion of direct evidence of discrimination, they will not be repeated here. On the whole, the Court finds that Iljas has pointed to enough direct and circumstantial evidence that there remains a genuine dispute of material fact as to whether Ripley's articulated reasons for terminating Iljas's employment were pretextual cover for age discrimination.

In conclusion, the Court finds that Ripley has not met its burden and thus denies summary

17

judgment as to Iljas's age discrimination claim.

**F.     Breach of Implied Employment Agreement (Third Cause of Action)**

Ripley moves for summary judgment on Iljas's claim that Ripley breached an implied employment contract when it terminated him.  ECF No. 54 at 27.  Iljas claims that Iljas and Ripley entered into an implied-in-fact contract that Iljas's employment would only be terminated for good cause.  Compl. ¶¶ 45-51.  Iljas alleges that Ripley broke this contract by firing him for reasons not amounting to good cause.  *Id.* ¶ 49.

California is an at-will employment state.  The relevant law provides that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other."  Cal. Lab. Code § 2922.  Section 2922 "establishes a presumption of at-will employment."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988).  However, "[w]hile the statutory presumption of at-will employment is strong, it is subject to several limitations."  *Guz*, 24 Cal. 4th at 335.  For example, "[t]his presumption may . . . be overcome by evidence that . . . the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on 'good cause.'"  *Foley*, 47 Cal. 3d at 677.  This presumption of at-will employment may be overcome by evidence of an express or implied agreement.  *See id.*  In general, the issue of whether an implied contract existed between parties is a question of fact.  *Id.*  Courts consider factors such as "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged."  *Id.* at 680 (citation omitted).  However, the California Supreme Court has cautioned that not "every vague combination of *Foley* factors, shaken together in a bag, necessarily allows a finding that the employee had a right to be discharged only for good cause."  *Guz*, 24 Cal. 4th at 337.  Rather, courts examine the "totality of circumstances" so as to "enforce the actual understanding" of the parties to an employment agreement.  *Id.*  "Where there is no express agreement," the plaintiff must "demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment.  If such evidence logically permits conflicting inferences, a question of fact is presented.  But where the undisputed facts

negate the existence or the breach of the contract claimed, summary judgment is proper." *Id.*

The first *Foley* factor, the personnel policies and practices of the employer, favors neither party. Although Ripley's employee handbook explicitly states that employment is at-will, Ripley has offered no evidence that Iljas ever signed this agreement. *See* ECF No. 55 at 67. The second *Foley* factor, longevity of career, favors Iljas because he worked for Ripley for 44 years. Neither party has submitted evidence regarding industry practice, the fourth *Foley* factor, so this factor is neutral.[3]

The key consideration here is the third *Foley* factor, assurances of continued employment. Iljas states that Mr. Line, while transitioning Iljas into his new role as Senior Manager for Special Projects, told Iljas that he had "been a loyal, dedicated employee, and you know, you'll always have a job at Ripley's." Sheik Decl. at 194. At the time, Line was Vice President of Attractions and Iljas's direct boss. *Id.* at 193. Line disputes that he made such a statement. Iljas's version of events is somewhat bolstered by Meyer's statement that both Line and Pattison told him that Iljas would have "a job for as long as he wanted." Meyer Decl. ¶ 11. Both Line and Pattison have denied making such statements. These are disputes of fact here that cannot be decided on summary judgment.

Ripley makes several arguments asserting that no reasonable jury could find that an implied contract existed between Iljas and Ripley. First, Ripley argues that the very fact that Ripley considered terminating Iljas's employment in 2014 is evidence that no such contract existed between them. *See* ECF No. 54 at 28. In addition, Ripley argues that Iljas never subjectively believed he had a job for life, and points to some of his emails in which he discusses the possibility of his termination. ECF No. 67 at 10-11. The Court need not opine on this evidence except to say that it does not eliminate the disputes between the parties. However, while a reasonable factfinder could interpret these emails in the manner Ripley suggests, a factfinder could also find the emails merely show that Iljas realized or feared Ripley was breaking the

---

[3] Ripley states in its motion that "[t]he industry standard for such businesses is, without known exception, at-will employment," ECF No. 54 at 29, but the assertion is unsupported by any evidence.

alleged agreement.

Ripley's most persuasive argument is that the "vague statements" alleged by Iljas are insufficient to overcome the at-will presumption. ECF No. 54 at 28. The Court must consider whether these statements, if found credible by a jury, are sufficient in conjunction with other established facts to support the finding of an implied contract. *See* Sheik Decl. at 194. First, the Court concludes that the statement "you'll always have a job at Ripley's" is strong enough to provide the basis for an agreement. *See id.* This interpretation is strengthened by Line's position of power within Ripley and over Iljas; if such a promise were indeed made, there would have been no reason for Iljas to doubt Line's authority to make such a promise. Furthermore, the context of this alleged statement also indicates it was a promise: Line made this alleged assurance while "transitioning" Iljas to his new role. *See id.* This could have been consideration for Iljas taking on this new role or gracefully departing from his former role. Meyer's statements, if found credible by a jury, provide further evidence of Ripley's intent to enter into such an agreement. *See* Meyer Decl. ¶ 11. Finally, Iljas's 44-year career at Ripley weighs heavily in his favor.

Ultimately, it is Iljas's burden to overcome the presumption of at-will employment and prove that an implied contract existed between the parties. However, the Court finds that there are genuine disputes of facts here and that these alleged facts could provide the basis for the finding of an implied contract. Thus, the Court denies summary judgment.

### G.      Severance Pay (Sixth and Eighth Causes of Action)

The issue before the court is whether an implied contract governing severance pay existed between Ripley and Iljas. *See* ECF No. 54 at 29. The Sixth Cause of Action pertains to the failure to pay wages at separation of employment in violation of California Labor Code §§ 201 and 203. Compl. ¶¶ 66-72. Neither party disputes that severance pay, if owed, would count as wages under this provision. The Eighth Cause of Action pertains to unlawful and unfair business practices in violation of California Business & Professions Code § 17200 and California Code of Civil Procedure § 526. Compl. ¶¶ 80-90. If Ripley was found liable for violations of the Labor Code because they failed to pay owed severance, this could be grounds for liability under § 17200. Thus, Ripley seeks summary judgment in their favor on the Sixth and Eighth Causes of Action to

United States District Court
Northern District of California

the extent that they are based on allegedly owed severance pay.  ECF No. 54 at 1.

Iljas alleges that Ripley has a policy and practice of providing long-time employees with one-month's severance for every year of service upon termination.  ECF No. 62 at 15.  There is convincing evidence that some severance policy existed when Bob Masterson was president, immediately prior to Pattison.  Masterson has stated that it was his practice to give a severance of "one month per year" of service to long term employees who were being terminated and hadn't "been a thief" or committed "corporate treason."  Sheik Decl. at 241.  Masterson provided several examples of this practice in his deposition. *See, e.g.*, *id.* at 244, 247.  Stram also stated that  she knew of "quite a few people" who received a severance of one month's pay per year served.  *Id.* at 228.  She named Andrea Washington and her son, Lucas Stram, as examples.  *Id.*

But Iljas was terminated on Pattison's watch, not Masterson's.  Although Pattison has admitted that "normally, people get a severance," Ripley argues that this policy has never been formal or existed in writing, that severance has always been discretionary, and that severance under Pattison has not been tied to length of employment.  Sheik Decl. at 26; ECF No. 54 at 30.  Line stated that Ripley "didn't have a hard or fast rule" regarding severance and would give different amounts based on the individual circumstances.  Sheik Decl. at 106.  In addition, Line explained that under the former president Bob Masterson, "whatever Bob decided was at his discretion."  *Id.* at 108.  On the other hand, Line did acknowledge that "there appears to be a precedent under Bob's presidency" for one month per year of service and that Bob had "reinforced it in several e-mails."  *Id.* at 185.

Ultimately, the numbers speak for themselves.  Iljas provides a table listing severed employees, their salaries, and their severance packages.  *Id.* at 277-78.  This table does not indicate any coherent policy in distributing severance payments, but instead supports only the theory that severance was determined on discretionary basis.  *See id.*  According to the table, severance pay for employees making between $60,000 and $100,000 varied between 21 and 182 percent of the "one month per year" standard for which Plaintiff advocates.  *Id.*  There simply is not enough evidence for a reasonable jury to conclude that there was an implied contract regarding severance pay for purposes of claims under §§ 201, 203, or 17200.  *See Westbrook v. Exel Inc.*,

No. CV 09-66-GW(RCX), 2009 WL 10673747, at *5 (C.D. Cal. Aug. 24, 2009) ("Plaintiff, however, argues that the fact that she has presented evidence that Exel had an unwritten (discretionary) severance policy is sufficient to allow the issue of severance pay to go to the jury. It is not."). Thus, the Court grants Ripley summary judgment as to Iljas's Sixth and Eighth Causes of Action to the extent that they are based on allegedly owed severance pay under an implied contract.

### H. Wrongful Termination in Violation of Public Policy (Seventh Cause of Action)

Ripley requests summary judgment in its favor on Iljas's claim for wrongful termination in violation of public policy. ECF No. 54 at 3. Iljas alleges that Ripley discriminated against him due to his age and/or race/national origin. Compl. ¶ 75. On this basis, Iljas alleges Ripley terminated him "in violation of the public policies of the State of California prohibiting discrimination, as expressed in FEHA, other California statutes, and decisions of the California and federal judiciary." *Id.* ¶ 76. Iljas has already dismissed his race/national origin claim. *See* ECF No. 62 at 17 n.1. As to Iljas's age discrimination claim, the Court has denied summary judgment because there remains an issue of material fact to be decided by a jury. Because this public policy claim is predicated on the age discrimination claim, there necessarily remains a dispute of material fact here as well. Thus, the Court denies summary judgment.

### I. Unpled Cause of Action for Failure to Accommodate a Disability

Ripley seeks summary judgment in its favor regarding the "unpled cause of action for failure to accommodate a disability." ECF No. 54 at 3.

"[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *see also IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. CV 13-9026-GW(AJWx), 2015 WL 12843822, at *13 (C.D. Cal. Jan. 29, 2015) ("[C]ourts will not grant or deny summary judgment based on unpled theories or claims unless doing so would cause no prejudice to the opposing party.").

Ripley argues that "Plaintiff has indicated an intent to allege, at some point, a claim that Ripley failed to accommodate a disability – Plaintiff's need to care for his wife." ECF No. 54 at 25. Iljas responds that he "does not see the need to address arguments about unpled claims." ECF

No. 62 at 17 n.1.  The Court agrees and declines to adjudicate this unpled claim.

### J.      Rule 11 Sanctions

In its reply brief Ripley invites the Court to sanction Iljas pursuant to Rule 11 of the Federal Rules of Civil Procedure.  The Court will decline the invitation.

In his complaint, Iljas originally asserted a claim that Ripley engaged in unlawful discrimination on the basis of race/national origin in violation of California Government Code § 12940.  Compl. ¶¶ 39-44.  Ripley moved for summary judgment on this claim as part of the present cross-motions, and Iljas then dismissed the claim.  *See* ECF No. 62 at 17 n.1.  In its reply brief, Ripley now requests Rule 11 sanctions, asserting that these claims were made without any factual basis and in bad faith.  ECF No. 67 at 17.

Federal Rule of Civil Procedure 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Ripley has not filed a separate motion for sanctions as required.  *See Campos v. Colvin*, No. 13-CV-03327-SI, 2015 WL 2266692, at *4 (N.D. Cal. May 14, 2015) (denying request for sanctions because movant failed to file a separate motion).  Also, Iljas dismissed his race/national origin discrimination claim before Ripley filed its motion.  This Court already dislikes reflexive requests for sanctions and awards them only "sparingly."  *Johnson v. Hewlett-Packard Co.*, No. C 09-03596 CRB, 2014 WL 3703993, at *5 (N.D. Cal. July 24, 2014) ("The strong public policy in favor of the peaceful resolution of disputes in the courts requires that attorneys not be deterred from pursuing legal remedies because of a fear of personal liability.  To decide otherwise would inject undesirable self-protective reservations into the attorney's counselling role, and prevent counsel from devoting their entire energies to their clients' interests." (quoting *In Re Marriage of Flaherty,* 31 Cal. 3d 637, 647 (1982)).  In this case, it would appear that Ripley failed even to read the rule under which it made its motion.  The request is denied.

### CONCLUSION

The Court grants in part and denies in part both motions and holds as follows:

1.      Iljas's motion for summary judgment on his claim for unpaid, vested vacation time is granted in part. Ripley's vacation policy constitutes an illegal forfeiture under § 227.3. Over his career, Iljas accumulated 645 days or 5,160 hours of vacation time. The Court denies summary judgment as to the number of vacation hours for which Ripley still owes Iljas payment.

2.      The Court grants Ripley's motion for summary judgment and denies Iljas's motion on Iljas's § 226 claim.

3.      Iljas's motion for summary judgment on his claim for unpaid wages at termination is granted in part. Ripley violated § 201(a) by failing to issue Iljas's final paycheck upon termination. The Court orders Ripley to pay Iljas $2,907.36 in penalties pursuant to § 203. The Court denies summary judgment as to whether the final paycheck violated § 201 by failing to include owed vacation pay.

4.      The Court grants Iljas's motion for summary judgment on his claim for failure to provide employment and personnel files. Ripley violated §§ 226(c) and 1198.5(b). The Court orders Ripley to pay Iljas a $750 penalty pursuant to § 226(f) and an additional $750 penalty pursuant to § 1198.5(k). The Court orders that, upon application, Iljas may recover his costs and reasonable attorneys' fees as to this cause of action pursuant to §§ 226(h) and 1198.5(l).

5.      The Court denies summary judgment as to Iljas's age discrimination claim.

6.      The Court denies summary judgment as to the issue of whether Iljas and Ripley entered into an implied employment contract.

7.      The Court grants summary judgment in Ripley's favor as to the Sixth and Eighth Causes of Action to the extent they are based on allegedly owed severance pay.

8.      The Court denies summary judgment on Iljas's claim for wrongful termination.

9.      The Court denies Ripley's request to adjudicate the "unpled cause of action."

/ / /

/ / /

/ / /

10. The Court denies Ripley's request to impose sanctions.

**IT IS SO ORDERED.**

Dated: August 8, 2019



_____
JON S. TIGAR
United States District Judge